AO 106 (Rev. 04/10) Application for a Search Warrant

United States District Court
Southern District of Texas
FILED

AUG 22 2014

David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Storage Shed Rented by Miguel Echevarria-Zuniga located at 5200 Mile 10 Road, Weslaco, Texas 78570

Case No. B-14-779-MJ

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A.

located in the Southern District of Texas, there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC 846 & 841 | Conspiracy and Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:

See attachment C.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Bradley E. Haines Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 08/22/2014

*Judge's signature*

City and state: Brownsville, Texas

Ignacio Torteya, III U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## DESCRIPTIONS OF THINGS TO BE SEARCHED

***The Premises***

The rented storage shed of Miguel Echevarria-Zuniga
Address: 5200 Mile 10, Weslaco, Texas 78570
In the City of Weslaco
In the County of Hidalgo
In the Southern District of Texas

***The Premises' Physical Description***

The premises known as 5200 Mile 10, Weslaco, Texas 78570, is further described as a one-story, white wooden structure with a grey metal roof with two doors on opposite sides of the building. The specific section of this building to be searched is the room accessed through the yellow wooden door, which is secured with a chain and padlock. The room is approximately 10 feet by 10 feet and is to the left of the door upon entering.

***Vehicles***

Vehicles belonging to:

1. Miguel Echevarria-Zuniga

Located on the premises to be searched and in addition, any and all vehicles on the curtilage - which are located on the premises at the time this search warrant is executed.

***Computers***

Unknown make and model computers owned by Miguel Echevarria-Zuniga to include any external/internal hard drives as well as any storage devices utilized to store memory which relate to the purchase and/or trafficking of narcotics.

Root Stimulator
& Starter Solution

# ATTACHMENT B

## Description of Evidence to be Searched for and Seized

1. Any controlled substances and/or paraphernalia on the premises or vehicles;

2. Records, papers, documents, receipts, ledgers, books, score sheets, phone lists, telephone bills, address books, and writings relating to drug trafficking;

3. Computer equipment, programs, software and the contents therein, storage disks and devices, and printouts relating to drug trafficking;

4. Photographs, negatives, videotape, films, undeveloped film, cameras, and the contents therein relating to drug trafficking;

5. Scales, vacuum sealing equipment, wrapping or packaging material relating to the smuggling, transportation, use and distribution of controlled substances. Materials and/or chemicals commonly used to "cut" or decrease the purity of controlled substances. Narcotic paraphernalia commonly used in the consumption or use of controlled substances;

6. Currency, cash, financial records, and other tangible items relating to drug trafficking;

7. All Federal income tax returns, filed or not filed, and supporting work papers, attachments, summary sheets or other documents used in their preparation;

8. Audio recordings on tape or electronic storage and retrieval devices including but not limited to, telephone answering machines and their cassette recordings, magnetic tapes, used or not used, and the contents therein relating to drug trafficking;

9. Business documents or records indicating occupancy, residency and/or ownership of businesses including, but not limited to; utility and telephone bills, canceled or unissued checks or drafts, keys, purchase and/or lease agreements, bills and receipts. Facsimile equipment and information contained on facsimile storage devices, shipping documents;

10. Papers, tickets, notes, schedules, receipts and other items relating to international or domestic travel relating to drug trafficking;

11. Records indicating occupancy, residency and/or ownership of the premises described herein including, but not limited to utility and telephone bills, canceled envelopes, receipts for rental payment, keys, and purchase/lease/rental agreements and associated documents;

12. Documents showing vehicle ownership, acquisition, possession, or control;

13. Telephones, cellular telephones, "beepers" and paging devices and records relating to these items. Two-way radios or electronic communications devices including, but not limited to; citizen's band radios, FM radios or HF radios and their attendant equipment. Scanners or radio equipment used to receive and/or monitor radio frequencies or transmissions;

14. Safes, lock boxes, gun safes, gun vaults, data safe, media safe, floor safe, fire resistant safes, cash handling storage safes, filing cabinet storage safe, all types of strong storage devices and all contents therein.

15. Farm implements including, but not limited to, shovels, rakes, hoes, pruners, hatchets, and machetes.

16. Plant cultivation tools including fertilizer and pesticides.

17. Irrigation equipment including PVC piping, joint connectors, valves, and sealants.

**ATTACHMENT C**

I, Bradley Haines, a Special Agent (SA) with the United States Immigration and Customs Enforcement (ICE) Homeland Security Investigations (HSI), being duly sworn, depose and state as follows:

**AGENT BACKGROUND**

1. I am a Special Agent with Immigration and Customs Enforcement Homeland Security Investigations and have been since March 2003. Prior to March 2003, I was a Special Agent with the United States Customs Service and had been since December 2001. I received training in criminal investigations from both the Federal Law Enforcement Training Center in Glynco, Georgia, the United States Customs Service Academy and the ICE Academy, also in Glynco, Georgia. I have participated in numerous investigations which resulted in the arrest of individuals involved in the smuggling of controlled substances into the United States, the illicit movement of people and goods across international borders and other related crimes. I have instructed ICE HSI Special Agent trainees in these types of investigations at the ICE Academy in Glynco, Georgia since August 2009.

2. Based upon my training and years of experience in the investigation of all phases of human, weapons, and drug trafficking; extortion; and other criminal activities, I have come to know:

   A. It is common for individuals involved in illicit activities to conceal caches of drugs, large amounts of currency, firearms, financial instruments, precious metals, gems, jewelry, electronic equipment, and other items of value and/or proceeds or records of drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made in drug trafficking activities. These documents, records and other items described above are often maintained in their residences, garages, other outbuilding and appurtenances associated with such residences, and curtilage associated with such residences, automobiles, boats, trailers and other vehicles, safe-deposit boxes, storage facilities, businesses and other locations that are readily available.

   B. Individuals involved in manufacturing of controlled substances maintain records pertaining to their acquisition, conversion, movement, secreting, transfer, concealment and/or expenditure of proceeds, such as: currency, financial instruments, investments, real estate, automobiles, boats, other vehicles, home furnishings, stocks, bonds, precious metals, gemstones, jewelry, and electronic equipment. They also maintain other assets in the form of books, records, invoices, receipts, records of real estate transactions, purchase agreements, automobile titles, bank statements, financial statements, letters of credit, money orders, cashier's checks, safe deposit box agreements and keys, and money wrappers.

   C. Individuals involved in criminal activity commonly profit and amass proceeds from the illegal acts. In order to protect their illegal activity and be able to utilize their profits, they attempt to disguise and legitimize these profits through money laundering activities.

   D. When individuals amass large proceeds from their illicit activities, they routinely utilize domestic banks and their attendant services including safe deposit boxes, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations, and business fronts.

E. Individuals who amass proceeds from illegal activities routinely attempt to further that conduct and/or conceal the existence and source of their funds by engaging in financial transactions with domestic and foreign institutions and businesses, through all manner of financial instruments, including cash, cashier's checks, money drafts, traveler's checks, wire transfers, etc.

F. That persons engaged in those and other illegal activities often place assets in names other than their own in order to conceal the true identity of the owner and avoid detection by law enforcement agencies. Nominees used for this purpose may, and commonly do, consist of relatives, friends, associates, and fictitious persons or businesses. The use of nominees often constitutes evidence of a conspiracy, as well as the identification of principals and accessories to the criminal offenses being perpetrated.

G. That even though these assets are in other person's names, the persons engaged in human smuggling, drug trafficking, and other criminal activities continue to use these assets and exercise dominion and control over them.

H. That it is common for records, tickets, receipts, bills and other documents relating to the use of those methods of travel and transportation to be kept and concealed within residences, businesses and/or conveyances owned or controlled by persons engaged in contraband smuggling activities. That travel in interstate or foreign commerce, or use of the mail or any facility in interstate or foreign commerce with intent to facilitate the perpetration of a specified unlawful activity itself constitutes the offense of Interstate or Foreign Travel or Transportation in Aid of a Racketeering Enterprise (18 USC 1952).

I. That persons engaged in human smuggling, weapons or trafficking of controlled substances, commonly take, or cause to be taken photographs of: themselves, their associates, co-conspirators, property, assets, cash, weapons, or controlled substances. These persons often keep these photographs in their homes or places of business, in vehicles or conveyances which they operate, and/or maintain computerized (digitized) images in mobile devices or electronic storage media.

J. Federal courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed; in particular, human smuggling and drug trafficking.

3. The facts and information contained in this affidavit are based upon my personal knowledge and the investigations and observations of other law enforcement officers involved in this and other investigations. The following is a summary of some of the pertinent information I learned in the course of this investigation. This affidavit is offered only to establish probable cause and is not intended to be a complete presentation of all the facts of the investigation.

**ONGOING INVESTIGATION**

4. On August 14, 2014 HSI Harlingen Special Agents and United States Border Patrol Agents responded to a notification from the Willacy County Sheriff's Office reporting a call from an Undocumented Alien, Israel Santiago-Guzman, regarding an alleged assault at an alien stash house. Upon arrival at the location at FM

490 and County Road #11, Special Agent Ismael Blas encountered and apprehended six undocumented aliens in the brush in the vicinity of the stash house.

5. Homeland Security Investigations Special Agents and Border Patrol Agents began to search the vicinity for other undocumented aliens believed to be in the vicinity. During the search, Homeland Security Investigations Special Agent Tim Meadows discovered a marijuana cultivation area (grow). Special Agent Meadows discovered gardening tools cast aside among the rows of marijuana, as well as, bottles of liquid plant fertilizer. Fresh water was also flowing from irrigation pipes into the rows, until the agents shut the flow of water off.

6. Special Agent Erik Wallace and I encountered and apprehended an additional six undocumented aliens hidden in the brush northeast of the marijuana grow.

7. Special Agent Albert Sosa apprehended another two undocumented aliens, Miguel Echevarria-Zuniga and Miguel Echevarria-Guizar, father and son respectively, in the brush northwest of the marijuana grow.

8. Search and eradication of the marijuana grow resulted in the discovery of various farming implements and the seizure of approximately 4232 kilograms of marijuana plants.

9. When questioned by Homeland Security Special Agents Eddie Gallegos and Alfredo Martinez, the Echeverrias falsely claimed to be part of the group of smuggled aliens, as both claimed that Santiago-Guzman aka "Sopilote" had smuggled them into the United States. However, in follow up interviews neither Santiago-Guzman nor the any of the other twelve undocumented aliens apprehended at that time identified them as part of their group. One of the undocumented aliens stated that while detained in the Border Patrol van, Echevarria-Zuniga indicated to him that he should go along with story that the Echevarrias had been part of their group. It is believed that the Echevarrias conceived their storyline about having been smuggled by a "Sopilote" after conversing with a number of the other undocumented aliens, while detained together in the Border Patrol vehicle. When confronted with a photo lineup, which included a photo of Santiago-Guzman aka "Sopilote", neither Echevarria-Zuniga nor Echevarria-Guizar could identify their supposed smuggler. Database inquiries reveal that Echevarria-Zuniga was arrested on November 14, 1989 for Possession with Intent to Distribute, Marijuana and was sentenced to eighteen (18) month confinement.

10. During initial questioning by Homeland Security Investigations Special Agents, Echevarria-Zuniga stated that he had been living in Mexico since his last deportation in 1990 and had only recently reentered the United States on August 6, 2014. However, when questioned later by Border Patrol Agents for his immigration processing, Echevarria-Zuniga changed the date of his reentry into the United States to August 12, 2014. In addition, Echevarria-Zuniga claimed that he was bound for Austin, Texas at the time of his apprehension. Echevarria-Zuniga was in possession of a vehicle key, but when asked, Echevarria-Zuniga would not tell the agents where the vehicle was located. Echevarria-Guizar stated that he had travelled to Mexico to visit his father and had just crossed back into the United States the day before he was apprehended.

11. On August 21, 2014, Homeland Security Investigations Group Supervisor George Truan received information from a concerned citizen stating that he recognized Miguel Echevarria-Zuniga from television news reports, as the person who was currently renting a storage shed located on the property at 5200 Mile 10 Road,

Weslaco, Texas for $80.00 per month from Nestor Efrain Anzaldua, Jr., the owner. In talking with Nestor Efrain Anzaldua, Jr. Group Supervisor Truan learned that Echevarria-Zuniga has been renting the room since at least January of 2014. Anzaldua, Jr. was unsure of the exact time of the rental agreement, as the contract was a verbal agreement between Echevarria-Zuniga and his father, Anzaldua, Sr., who passed away in January of 2014. Anzaldua, Jr. stated that he had observed both the father and the son, Echevarria-Zuniga and Echevarria-Guizar, on a number of occasions at that location since the beginning of this year and believed Echevarria-Zuniga would occasionally spend the night in the room, but did not believe that Echevarria-Guizar ever had. On August 22, 2014, Anzaldua, Jr. stated that he last saw both Echevarria-Zuniga and Echevarria-Guizar on the property approximately two weeks ago.

12. On August 21, 2014 Homeland Security Investigations Group Supervisor George Truan observed an empty jug of Root Stimulator and Starter Solution plant food among a number of empty beer cans on the ground directly in front of the door to the room rented by Echevarria-Zuniga. That same day, Homeland Security Investigations Special Agents Tim Meadows and Bill DeVito received consent from Nestor Efrain Anzalduas, Jr. for Customs and Border Protection Canine Enforcement Officer Juan Salinas to utilize drug detector dog Mat (CH-02) to sniff for the presence of drug odor around the property rented by Miguel ECHEVARRIA-Zuniga. Mat alerted to the presence of a drug odor emitting from the room rented by Echevarria-Zuniga.

**REQUESTED SEARCH WARRANTS**

13. I have reason to believe and do believe that evidence and/or proceeds derived from narcotics and alien trafficking, are being stored at 5200 Mile 10 Road, Weslaco, Texas; the said evidence being:

    Controlled substance, Currency, currency equivalents, precious stones, precious metals. Jewelry and financial instruments including stocks and bonds and other tangible items representing the proceeds of illegal activities; Insurance records, loan applications and records from financial institutions, wills, real estate records, money drafts, certificates of deposit, letters of credit, money orders, cashier's checks, safety-deposit box keys, financial records and agreements, money wrappers and other documents and items evidencing the obtaining, expenditure, secreting, transfer, and/or concealment of assets. Farming implements including but not limited to: shovels, rakes, hoes, pruners, hatchets, machetes, in addition to products for cultivating plants including fertilizer, pesticides, and irrigation piping, connectors and valves.

**SUMMARY**

14. Based on the information presented in this affidavit, your Affiant believes that there is probable cause that Miguel Echevarria-Zuniga is participating in a marijuana cultivation enterprise and that evidence of this participation are stored at 5200 Mile 10 Road in Weslaco, Texas.

15. Therefore, your Affiant respectfully requests that a search warrant be issued for address described above.

Bradley E. Haines
Special Agent
Homeland Security Investigations

Sworn and subscribed to before me this 22 day of August, 2014.

Ignacio Torteya, III
United States Magistrate Judge
Southern District of Texas